367 P.2d 938

**TRANSWESTERN PIPE LINE COMPANY, Petitioner-Appellant,**

v.

**Cecil E. YANDELL et al., Respondents-Appellees.**

**No. 6926.**

Supreme Court of New Mexico.

Dec. 20, 1961.

Rehearing Denied Feb. 1, 1962.

Smith, Smith & Tharp, Clovis, Vinson, Elkins, Weems & Searls, James W. McCartney, Houston, Tex., for appellant.

Dan B. Buzzard, Clovis, for appellee.

COMPTON, Chief Justice.

This is a condemnation action whereby appellant, a natural gas company, sought to acquire by its powers of eminent domain under the Natural Gas Act, 15 U.S.C.A. § 717 et seq., rights of way and easements 66 feet in width across the irrigated farm properties of appellees and others. Appellant will be referred to herein as petitioner and the appellees will be referred to as respondents.

After filing of notice of suit and bond, the court, in accordance with our Eminent Domain Statutes, §§ 22–9–1 to 22–9–38,

1953 Comp., appointed commissioners to assess the damages sustained by the several respondents and ordered possession to the petitioner, following which pipelines were constructed beneath the surface of the lands. Thereafter, the commissioners filed their report, to which the petitioner objected and excepted. Upon a hearing, the court confirmed the commissioners' report. Appeal therefrom was taken by petitioner to the district court where the issues of compensation and damages were tried de novo to a jury. Prior to the jury trial, however, several of the original respondents reached a separate agreement with the petitioner, and as to them no adjudication is involved here.

The jury found for respondents and judgment was entered on the verdict confirming the awards of the rights of way and easements to the petitioner and awarding damages to the respondents. The judgment also included a provision that any future damages arising out of the repair, maintenance, operation or construction of a gas line within the rights of way would be paid for by petitioner. Motion was made to reform and correct the judgment to conform to the obligations petitioner alleged it offered to assume as to future damages, but the motion was overruled. Petitioner also moved for a remittitur which likewise was overruled. Appeal to this court was taken and eleven points assigning error to the court below are relied upon by petitioner as grounds for reversal of the judgment. Obviously, the questions raised will unduly extend this opinion.

■ The first point advanced by petitioner is that the court erred in confirming the report of the commissioners and refusing to order a reappraisal under § 22–9–6 of the Eminent Domain Statute, supra. In view of our disposition of this point, it is not necessary to go into the reasons urged by petitioner in support of a reappraisal. Section 22–9–8, supra, provides that after final confirmation of any report, an appeal from the order of the court confirming the report, limited to the issue of the amount of compensation and damages, may be taken by any interested person, and the cause shall be tried de novo, the parties being entitled to a trial by jury as in other civil cases. El Paso Electric Co. v. Milkman, 66 N.M. 335, 347 P.2d 1002. The order confirming the report becomes final unless an appeal is taken therefrom. State ex rel. State Highway Commission v. Marquez, 67 N.M. 353, 355 P.2d 287.

■ The Eminent Domain Statute, therefore, specifically provides for the procedure to be followed by parties seeking relief from the action of the court in confirming the reports of commissioners. This appeal to the district court for a trial de novo is, in effect, not an appeal in the usual sense, but rather a notice of dissatisfaction with the award of compensation and damage by the commissioners and a request

for a new award to be made by a jury and the court, and the trial de novo is not the beginning of a new action but a continuation of the proceeding from the time of filing of the original petition in condemnation. State ex rel. Weltmer v. Taylor, 42 N.M. 405, 79 P.2d 937. The petitioner here having followed the procedure outlined in the statute for giving notice of dissatisfaction with the court's action in confirming the report, the report, as well as the action of the court in confirming it, became functus officio. Since the report forms no part of the final judgment rendered by the court on the verdict at the trial de novo, we are not here concerned either with the contents of that report or with any question relating to the discretion of the court in confirming it. The cases cited by petitioner in support of his contention on this point do not deal with the particular situation involved here.

Under points II to V raised by petitioner, which are grouped and argued together, it is asserted that the court erred in rendering judgment on the verdict because the jury entertained an erroneous view of the measure of just compensation in awarding "full fee value" for the easement areas taken, plus additional elements of damage; that the verdict amounts to a double or multiple payment of damages.

The damages awarded to the respondents by the jury, and on which judgment was entered by the court, consisted of the highest figure testified to as market value of the lands condemned for the easements, plus (a) additional amounts to restore the properties to their original condition, (b) damages for loss of crops as a result of the construction of the gas lines, and (c) the provision as to future damages set forth above.

The substance of petitioner's claim may be stated thusly: (1) that where only easements are taken in the properties, leaving respondents with substantial benefits and uses therein, it was error for the jury to award the "full fee value" for the easements, and for the court to render judgment thereon, because the award is excessive as a matter of law; and that for this error alone, reversal and remand are required; but (2) having awarded the "full fee value" for the easements taken, it was error for the court to render judgment on the "total of all elements of damage" when portions of such damage were attributable to the easement areas, thereby causing the award to result in a double recovery.

The respondents, however, say that petitioner having failed below to move for a new trial or judgment non obstante veredicto cannot now claim error on the part of the court in rendering the judgment. Their contention cannot be sustained. Rule 20 of the Rules of this court specifically provides that it is not necessary to file a motion for new trial in any cause in order

to preserve for review errors committed by the trial court. And a motion for judgment non obstante veredicto does not challenge the sufficiency of the evidence to support the findings of the jury but simply admits, for the purpose of the motion, the existence of those facts while asserting that, based thereon, the verdict should have gone the other way. Michelson v. House, 54 N.M. 197, 218 P.2d 861. However, petitioner's motion for remittitur does directly challenge both the excessiveness of the verdict as a matter of law and the sufficiency of the evidence to support such a verdict in that it alleged a double recovery; the amounts that the verdict was excessive; and, whether the amounts awarded were supported by the law or by the evidence.

■ This court has held that in determining whether a verdict is excessive, it does not weigh the evidence but determines the excessiveness as a matter of law; that where the trial court has allowed the verdict to stand, this court will look to see whether the evidence, viewed in the light most favorable to upholding the verdict, affords substantial support for the verdict and if it does the verdict must be affirmed. If it does not, and the sole issue is one of damages, all other issues having been fully and fairly litigated, a remittitur may be ordered. Vivian v. Atchison, Topeka and Santa Fe Railway Co., 69 N.M. 6, 363 P.2d 620. With these rules in mind, we proceed to a discussion of other applicable rules.

■ In arriving at the proper amount of compensation to be allowed in condemnation proceedings, this court has said that the correct measure of damages is the difference in the value of the property immediately before the taking and the value of the property immediately after the taking, the owner being entitled to the difference in these sums, in addition to a recovery for the various elements of damage to the remaining land not taken but injuriously affected. City of Tucumcari v. Magnolia Petroleum Co., 57 N.M. 392, 259 P.2d 351; Board of County Com'rs of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859; 38 A.L.R.2d p. 790; 29 C.J. S. Eminent Domain § 139; that where the taking results in benefit to the lands not taken, then the benefits are to be offset against the damages. Board of Com'rs of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682; that where there are no benefits and no consequential damages as a result of the taking, then the correct measure of damages is the reasonable market value of the land taken. Middle Rio Grande Conservancy District v. Crabtree, 69 N.M. 197, 365 P.2d 442. These rules have been followed by this court in cases involving condemnations of land in fee. We think they are equally applicable to condemnations for easement purposes.

Our review of a voluminous record, therefore, is limited to a determination whether the verdict is supported by substantial evi-

dence, and in doing so we must view the evidence in a light most favorable to the verdict. We find testimony for both parties relating to the market value of the various tracts of land before the taking, and the value of the tracts after the taking and of the easements thereon; the damage to the lands not taken but adversely affected, including crop loss; and detailed testimony and evidence with respect to the amount of acreage on each tract necessary for restoration by way of filling, leveling, rock removal, fertilizing and the present condition of soil for productivity. The testimony of petitioner's witnesses on valuation, as may be expected, reflected lower market values per acre for the entire tracts before the taking and lower values for the easement areas taken and the restoration costs. On the other hand, respondents' witnesses on valuation set a market value per acre on the land as a whole, and computed the value of the easement by multiplying the number of acres in the easement area by the market value set per acre on the tract as a whole unit. This figure, in their opinion, represented the value of the easement taken by petitioner but not necessarily the market value or full fee value of the easement area separated from the tract as a whole. It was a base figure also used by them in the method they employed for computing damages to the lands not taken but adversely affected. We do not conclude from their testimony, as does petitioner, that applying the "before and after" rule, this figure represents the "full fee value" of the easement area.

The verdict set forth as to each individual tract of the respondents, among other items, a certain sum for "the value of the easement," which amount coincided, in each case, with testimony of respondents' witnesses as to the market value of the land per acre contained in each tract as a whole before the taking. Petitioner complains that the market value thus testified to, on which the jury rendered its verdict, is the "full fee value" of the easement strip to which respondents, as a matter of law, are not entitled. As we view the evidence the market value estimated per acre in each tract as a whole before the taking and testified to as the value of the easement does not necessarily lead to this conclusion.

■ The recent case of Territory of Hawaii v. Adelmeyer, Haw., 363 P.2d 979, 988, is so similar to the case on review, we treat it quite copiously. That court had this to say:

"* * * To value the entire tract before the taking and reduce that value to a square footage price tag and then use that price tag to determine the value of the land remaining after the partial taking is to beg the question. It is only by considering the difference between the value of the entire tract before the taking and the value of the

remainder after the taking through separate and independent valuations that the presence or absence and the extent of damages or benefits or both are determined.

"* * * In a proceeding to condemn part of a tract of land, the rule that the part taken should be valued as part of the whole does not mean that it must be valued according to its proportional value of the whole by multiplying the number of square feet therein by the square foot value of the entire tract, as the phrase 'as a part of the whole' does not mean average part of the whole, but that in assessing value to the part taken, the trier of facts must consider its value arising from its availability for use in conjunction with the part not taken, and any increased value inhering in the part taken as a part of the larger tract must be reflected in the award to the owners." Citing People v. Loop, 127 Cal.App.2d 786, 274 P.2d 885.

Again, 4 Nichols, Eminent Domain, 3d ed., § 14.231, p. 330, states:

"In assessing the value of the land taken as part of the entire tract it is not proper merely to compute the percentage value on the basis of an artificial average unit value for the entire tract unless the actualities of the case accord with such coverage value. It may be that the part taken is the most valuable part of the tract considered from a qualitative point of view. To attribute an average unit value thereto which is based in part on the lower value of the balance of the tract is inequitable to the owner in a double aspect of the situation. It attributes a value to the part taken which is lower than its actual fee value and it attributes a higher ultimate value to the remainder area than its actual value, thereby reducing his recovery as to both factors below his actual damages."

In Union Railway Company v. Raine, 114 Tenn. 569, 86 S.W. 857, 860, the court said:

"When a small strip or portion of the land is involved, it ought to be valued at such a price, for the quantity taken, as the jury deemed it would be worth at that place and in that form, whether that be more or less than the price proven per acre for the whole tract."

Thus we can see that the full market value of the property as a whole used to compute the value of the easement, did not represent the "full fee value" of the easement areas taken.

▆▆▆▆▆ Ordinarily, market value of land is based on the amount for which it would sell between one willing to sell and one willing to buy. But this is not true in condemnation proceedings where a willing

seller is lacking. Nevertheless, this is the basis on which the opinion evidence for both parties was given as to market value, and the court properly instructed the jury on what is meant by the term "market value" for this purpose. As previously stated, in condemnation proceedings in this state, the value of the land taken is based on the depreciation in value of the entire tract burdened with the easement. The court also instructed the jury on this point. It is readily seen in this case that the overall market value per acre of a tract of land does not always represent the market value, or "full fee value" of certain individual acres to be lifted out of the tract. Clearly, condemnation in fee of a strip of land 66 feet wide running either straight or diagonally through irrigated farm lands could so depreciate the value of the remaining portions of the land thus separated as to render one portion, or perhaps both, valueless for the purposes used, or at the very least could possibly so depreciate the value of what was left as to make the market value of the area taken drastically higher than its market value as a part of the entire tract before the taking. Therefore, the evidence of the market value per acre of the whole tract before the taking, employed here by respondents' witnesses as a basis in determining the value of the easement does not, then, appear to us to represent the "full fee value" of the easement areas separated from the entire tracts, nor do we find any-where in the record a reference to a "full fee value."

The record discloses that the jury was properly instructed on every phase of the measure of damages applicable in condemnation proceedings; on what is meant by "market value"; and that it must not render a verdict in an amount less than the lowest, nor more that the highest, pertinent evidence received in the case. The jury had the evidence of both sides before it in its deliberations and there is substantial evidence to support the verdict reached. The only instruction to which petitioner objected below and now claims as error on appeal is the one relating to market value, but we have already disposed of this point as not being well taken. We must conclude, therefore, that the verdict as to the values of the easements was not excessive as a matter of law, and the court properly rendered judgment thereon.

Petitioner further contends that once having awarded the "full fee value" for the easements taken, it was error to render judgment on the "total of all elements of damage" when portions of such damage were attributable to the easement areas, because this resulted in a double recovery. It should be pointed out, however, that nowhere has it been set forth by petitioner, nor do we find from the record what, if any, portions of the total of all elements of damage are attributable to the

easement areas. The form of verdict presented to the jury, and to which no objection by petitioner is disclosed, listed the following elements of damage to be considered: (1) cost of restoring surface of land to the level it was at the time of taking; (2) cost of rock removal; (3) cost of fertilizing; and (4) loss of crops. Since petitioner specifically alleged that the surface over the pipeline would be filled and graded so as to restore it as nearly as practicable to its original level, and since we have already determined that the values of the easements awarded do not necessarily represent the actual market values of "full fee values" of the lands within the easement areas, the fallacy of petitioner's contention becomes obvious. It is clear from the evidence that in order to restore the original level as nearly as possible to the land not taken but adversely affected, the easement area would have to be included in the restoration process since the easement areas lie between the two portions of the respective tracts to be levelled and restored as a whole unit.

The trial court conducted a pretrial conference, following which he entered an order to the effect that evidence of voluntary settlements made by the other landowners in the vicinity of the lands in question is inadmissible. The refusal of the court to permit evidence as to prices paid other landowners in the area for the purchase of easements and rights of way similar to those being acquired from the respondents is asserted as error.

We see no basis for this claim of error. Under Rule 16 of the Rules of Civil Procedure, § 21–1–1(16), New Mexico Statutes Annotated, 1953 Comp., governing pretrial procedure, the court may make an order reciting the actions taken at the conference, and such order when entered controls the subsequent course of the action unless modified at the trial to prevent manifest injustice. In Johnson v. Citizens Casualty Company of New York, 63 N.M. 460, 321 P.2d 640, which involved a pretrial order limiting the issues in the case, this court held that when a pretrial order is made and entered without any objections or exceptions thereto, and thereafter no motion is made to modify the same, the course of trial is controlled thereby and it becomes the law of the case. Rivera v. American Export Lines (D.C.S.D.N.Y.), 13 F.R.D. 27, holds that a pretrial order may contain rulings as to the admissibility of evidence. We are aware of conflict of authority as to the admissibility of evidence of prices paid by a condemnor for similar property in the vicinity, as evidence of value, but it is generally accepted that what constitutes "similar or like property" is a determination which must vary with the individual circumstances of a case, Covina Union High School District of Los Angeles County v. Jobe et el., 174 Cal.App.2d 340, 345 P.2d 78. A trial judge is granted a

wide discretion in determining the admissibility of evidence of other sales, taking into consideration, among other things, whether the price paid was sufficiently voluntary to be a reasonable index of value. People v. Murata, 161 Cal.App.2d 369, 326 P.2d 947. In the recent case of Colorado Interstate Gas Co. v. Uinta Development Co. (Wyo.) 364 P.2d 655, which involved condemnation proceedings for a pipeline easement, the court adhered to the majority rule that prices brought about under the actual threat of lawsuits furnish no fair basis of market value, whether or not it is similar to that in controversy. See also 4 Nichols, Eminent Domain, 3d ed. p. 71; 118 A.L.R. 869, supplemented in annotation at 174 A.L.R. 386, and cases cited therein.

It further appears from the record that the evidence excluded by the pretrial order and tendered at the trial purported to show that the prices paid by petitioner to other adjacent landowners was much less in amount even than petitioner's own witnesses on value testified to at the trial. If the trial court, in its discretion, determined that the prices paid to other landowners were not reasonable estimates of the value of the land in this case, or that the owners settled for less than the land might have brought on the open market in order to avoid litigation, this court will not rule that the trial court abused its discretion in excluding the evidence.

Petitioner complains that the court erred in not granting its motion for a mistrial on the ground that respondents' counsel, and their witnesses, by certain statements made by them identified the witnesses as *commissioners* who had been previously appointed by the court to appraise the property, in direct opposition to the stipulation between the parties at the pretrial hearing wherein it was agreed that this information should not be disclosed to the jury. In this regard the record shows that after the second of the three former commissioners had testified as witnesses for respondents, petitioner pointed out to the court the use by the witness of the word "appraised" and moved for a mistrial. The court in overruling the motion stated that the use of this word did not necessarily advise the jury that he was one of the commissioners, but admonished the witness to refrain from any further reference to the words "appraisal" or "commissioner." At the close of the argument to the jury, which was not made a part of the record here, petitioner again moved for mistrial on the ground that respondents' counsel made the statement that one McAlister, a witness, before leaving the stand had said that "in his opinion his appraisal was low." Again the motion was overruled. In reviewing McAlister's testimony, we find the following statement made by him:

"A. Well, the first time I looked at that land after the pipe line had been

across, I said damages at $1,350.00. But, for damages to adjacent lands since that time and after watching the crops, I made a mistake. It is not enough."

No objection was made by petitioner to this testimony at the time it was given in the form of an appraisal of value. Counsel's reiteration of the testimony by using the word "appraisal," in summing up to the jury, can hardly be said to have been referring to McAlister as a commissioner. Petitioner cites three other instances of testimony in his brief which he contends, in effect, identified the witnesses with the commissioners or former appraisals, but it does not appear that he made objections to this testimony below. Petitioner states that the prejudicial effect upon the jury is reflected by a comparison with the verdict of the jury and the report of the commissioners. This is a conclusion without support. The report was not in evidence and the testimony given by the witnesses, as witnesses, and not as former commissioners, support the verdict and more nearly reflect the weight given to their testimony. A motion to declare a mistrial is addressed to the sound discretion of the trial judge and is reviewable only for an abuse thereof. Addison v. Tessier, 62 N.M. 120, 305 P.2d 1067. The trial judge is in a much better position to know whether a miscarriage of justice has taken place and his opinion is entitled to great weight in the absence of a clearly erroneous decision. We find no abuse of discretion by the court in overruling the motion for mistrial.

Petitioner further contends that the trial court erred in refusing to strike the testimony of one Grimes, who testified as to his methods of land leveling and dirt removal on the various properties, because it inflated the damages and was so farfetched and speculative that the jury should have been instructed not to consider it. Petitioner's observation in his brief, however, that "Through this Rube-Goldberg restoration process, the witness was able to inflate respondents' supposed damages to an amount considerably in excess even of the total 'elements of damage' found by the jury," would seem to deny his own contention. At the trial, some of Grimes' testimony was objected to and some of it was specifically agreed to by petitioner as being admissible. His testimony in its entirety was only attacked at the conclusion of extensive cross-examination when he moved to strike all of it on the ground he was not qualified. In other words, having heard the testimony and finding most of it unpalatable, petitioner moved to have it all stricken. This court has held that it is not error to refuse to strike evidence received without objection and whether evidence received without objection will be afterwards excluded on motion lies largely within the court's discretion. State v. Riddel, 38 N.M. 550, 37 P.2d 802; Priestley v. Law, 33

N.M. 176, 262 P. 931. A motion to strike the entire testimony of a witness is properly denied if any portion of it is admissible. Territory of Hawaii v. Adelmeyer, supra. Further, whether an expert has the necessary qualifications to testify on any given proposition is within the discretion of the trial court and the court's ruling will not be disturbed unless that discretion has been abused. State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964, citing Bunton v. Hull, 51 N.M. 5, 177 P.2d 168; State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L. R.2d 908; Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757. Since this assignment of error deals only with the court's refusal to strike all of the testimony, most of which was admitted without objection, we cannot consider the portions objected to below, nor has it been set out before us. There was no error committed by the trial court in refusing to strike the testimony of the witness Grimes.

■ Petitioner finally contends that the trial court erred in rendering judgment as to future damages because it is contrary to the agreement of the parties. It appears that after the filing of its petition, petitioner stipulated with respondents, with notice to the court, as follows:

"Petitioner shall be obligated to pay respondents entitled thereto for any future damages to fences, buildings and growing crops within said 66-foot wide right of way area which may immediately and directly result from the operation, repair, inspection and replacement of its pipeline."

The stipulation is not included in the record before us, but is set forth in petitioner's motion to reform and correct the judgment, which is part of the record, and the stipulation is acknowledged by respondents to be as set forth above. The court in rendering judgment, however, ordered as follows:

"It is further ordered that any future damage that may arise out of the repair, maintenance, operation or construction of a gas line within the right-of-way will be paid by the petitioner, its successor or assigns, to the respondent affected by such repair, maintenance, operation or construction."

Respondents contend that the judgment merely followed the stipulation. We do not agree; it is clear that the obligations imposed by the court exceed those to which the parties had stipulated. Since there is no conflict between the parties hereto as to the future damages stipulated to, of which the trial court had notice, we think the judgment should conform to the strict wording of the stipulation.

The judgment of the court should be modified with respect to future damages in accordance with the opinion, and, as modified, affirmed.

It is so ordered.

CHAVEZ, J., concurs.

NOBLE, J., concurring specially.

CARMODY and MOISE, JJ., not participating.

NOBLE, Justice (concurring specially).

I concur in the opinion except as to the disposition of that portion which applies to the value of the easement, the basis of which is that market value of the easement area testified to did not represent the "full fee value" of the easement areas taken. Absent, as here, any evidence that the "full fee value" of the easement areas taken was higher than the unit value of the larger tracts from which the easements were taken, the jury should not be permitted to speculate as to a value different from that testified to by the witnesses. Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798.

The judgment in the condemnation proceeding was the confirmation of the commissioner's report assessing the damages. State ex rel. State Highway Commission v. Marquez, 67 N.M. 353, 355 P.2d 287. The condemnor appealed to the district court from that judgment as provided by Section 22-9-8, N.M.S.A., 1953 Comp. and a jury trial de novo was had. Upon such appeal, the burden is upon the party appealing to establish the damage or the lack of it. In this case, the condemnor introduced testimony as to the market value of the easement area taken based upon the per acre value of the whole tract. The value thus established was testified to as its market value before the taking. No evidence was adduced as to any value the easement area had after its return to the landowner upon installation of the pipe line. It is uncontradicted that the lands from which the easement areas were carved were irrigated farming tracts and that it would have been impossible to irrigate the remaining lands unless the surface of the easement areas were restored to their original levels. These consequential damages were separately awarded and are not made the basis of the appeal. Appellant contends that because consequential damages were awarded to compensate for placing the surface of the easement strips as nearly as possible in their former condition, the verdict assessing the damage for the value of the easement areas at their market value is excessive and amounts to an award of double damages. Absent evidence of any value after the taking, the jury will not be permitted to speculate as to such value, if any. Baros v. Kazmierczwk, supra. Furthermore, appellant proceeded throughout the trial on the theory that market value was the proper basis of the award and having offered no evidence of any value after the taking will not now be permitted to alter its position. Middle Rio Grande Conservancy District v. Crabtree, 69 N.M. 197, 365 P.2d 442; Hendricks v. Hendricks, 55 N.M. 51, 226 P.2d 464; Horton v. Atchison, T. & S. F. Railway Company, 34 N.M. 594, 288 P. 1065.