Kerry M. BERGER, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 90–1030.

District of Columbia Court of Appeals.

Submitted Sept. 6, 1991.
Decided Oct. 8, 1991.

John W. Karr and William G. McLain, Washington, D.C., were on the brief for appellant.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Sidney R. Bixler, Asst. Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

PER CURIAM:

Appellant Kerry Berger appeals from his conviction of the offense referred to as driving while under the influence of liquor, D.C.Code § 40–716(b) (1990), on the ground that the government failed to prove that he was guilty of the offense charged in the information. We affirm.

I.

Appellant was charged by information with violating D.C.Code § 40–716(b)(1) (1990), which makes it illegal to "operate or be in physical control of any vehicle" while "under the influence of intoxicating liquor...." At a bench trial the government presented one witness, Officer Wallace Carmichael, who testified that he received a radio call at 3:10 a.m. to assist another officer on a "possible DWI case." When Officer Carmichael arrived on the scene, he saw appellant seated inside a vehicle parked on the side of the road. The officer did not remember whether the engine was running or whether the keys were in the ignition; nor did the officer recall how he obtained possession of the keys.[1]

Officer Carmichael noticed a strong odor of alcohol on appellant's breath, and saw that appellant's eyes were bloodshot and his face red. The officer performed several field sobriety tests, placed appellant under arrest and transported him to the station house. Officer Carmichael had made about 200 previous arrests for driving under the influence, and in his opinion appellant was under the influence of alcohol.[2]

Appellant moved for a judgment of acquittal, and the trial judge agreed that "there is no inference that I can draw right now, because the defendant wasn't even placed in the driver's seat by the detective." The judge allowed the government to reopen its presentation, and Officer Carmichael further testified that appellant was seated in the driver's seat when the officer arrived at the scene, that appellant was alone in the vehicle, that no one else was in the vicinity of the vehicle, and that no others were arrested. The officer further explained that appellant had been given his keys back, because when a person is released on citation "we give them all their property because they are no longer under arrest."[3] The trial judge denied appel-

---

1. However, the officer did have possession of the keys "during transportation" of appellant to the station house, and later, at the time of his release, appellant was "given his keys back."

2. The government also introduced evidence that appellant refused to take a breathalyzer test, as demonstrating consciousness of guilt. The defense offered evidence that appellant's refusal was based on advice after a telephone conversation with his attorney, and that once the attorney arrived twenty minutes later, appellant requested that the test be administered. The trial judge found that no inference of "guilty knowledge" could be inferred from appellant's failure to take the test.

3. Appellant's lawyer, who had come to the station house, testified during the defense case that following appellant's release, the lawyer "dropped Mr. Berger off at his car."

lant's renewed motion for judgment of acquittal.

## II.

D.C.Code § 40–716(b)(1) provides that "[n]o individual shall, ... under the influence of intoxicating liquor ..., operate or be in physical control of any vehicle in the District." The information in appellant's case was a preprinted form, which provided several boxes that could be checked as appropriate. Tracking the statutory language, the form contained two boxes: one for "operate" and another for "be in physical control of" an automobile. In appellant's case the prosecutor checked only the "operate" box.[4] Because the government's evidence at trial demonstrated only that he was "in physical control" of a vehicle, appellant claims the government presented insufficient evidence to support the theory set out in the charging instrument.

■■■ Although appellant purports to challenge the sufficiency of the evidence, contrary to appellant's contention regarding the insufficiency of the evidence that he was "in physical control of" the vehicle within the meaning of § 40–716(b)(1), the direct evidence showed that he alone was in the car, that he was sitting behind the steering wheel, and that the car keys were given to him when he was released only hours later. The trier-of-fact could reasonably find that appellant was in control of the vehicle under the statute. Even a drunk with the ignition keys in his pocket would be deemed sufficiently in control of the vehicle to warrant conviction. The absence of movement of the car or a warm engine is not, as appellant suggests, dispositive. The officer's testimony about his action in asking appellant for his driver's license and defense testimony about driving appellant back to his car, combined with the other evidence, provided sufficient evidence of guilt beyond a reasonable doubt that appellant was "in physical control of" the vehicle at 3:30 a.m. when Officer Carmichael arrived at the scene.

■■■ Appellant's best contention on appeal, therefore, can be characterized as a claim that there was an improper variance between the allegations in the information and the proof at trial. As our decisions make clear, this challenge must fail.

The court in *Byrd v. United States,* 579 A.2d 725 (D.C.1990), explained the rationale underlying the requirement that the government file an indictment or information:

> An indictment, or other charging instrument, serves three vital constitutional functions. First, it insures that the accused is apprised of the charges so as to be able to adequately prepare a defense. Second, it describes the crime with sufficient specificity to protect the accused against future jeopardy for the same offense. Third, it "protects against oppressive actions of the prosecutor or a court, who may alter the charge to fit the proof."

*Id.* at 727 (citations omitted). Thus, an information, no less than an indictment, insures the defendant's constitutional right "to be informed of the nature and cause of the accusation...." U.S. CONST. amend. VI.[5]

---

4. The relevant portion of the form looked something like this:

NAME _____

    *   *   *   *   *   *

☐ DRIVING UNDER THE INFLUENCE (T301): did

  ☐ operate

  ☐ be in physical control of a vehicle while under the influence of

  ☐ intoxicating liquor

  ☐ a drug

  ☐ the combination of intoxicating liquor and a drug in violation of D.C.Code § 40–716(b)(1) (1982).

Appellant's name was typed on the top line, and the following boxes were checked: the box to the left of "Driving under the Influence," the box to the left of "operate" and the box to the left of "intoxicating liquor."

5. An indictment, unlike an information, also serves the Fifth Amendment function of insuring the defendant's "right to be tried upon the charge subjected to the grand jury's scrutiny...." *Ingram v. United States,* 592 A.2d 992, 1005 (D.C.1991); *see* U.S. CONST. amend. V. ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury").

As the *Byrd* court made clear, however, "[a] variance between allegation and proof is not fatal … unless the defendant has been deprived of an adequate opportunity to prepare a defense or has been exposed to the risk of being prosecuted for the same two offenses." *Byrd, supra,* 579 A.2d at 727. In *Byrd,* for example, the defendant was charged by information with violating D.C.Code § 33–550 (1981), which makes it illegal to possess drug paraphernalia with the intent to use it to administer a controlled substance "by subcutaneous injection," *i.e.,* by a hypodermic needle and syringe. *See id.* at 726 & n. 4. The government's proof at trial, however, showed only that appellant possessed a pipe. Conceding on appeal that appellant should have been charged with D.C.Code § 33–603(a) (proscribing the possession, with the intent to use, of any drug paraphernalia), the government argued that appellant was not prejudiced by this variance between allegation and proof. The court agreed, relying on the fact that the jury instructions "required the jury to find all of the elements of § 33–603(a)." *Id.* at 728. Moreover, the defendant could not show "that his defense would have changed in any respect" had the information referred to the proper statute. Accordingly, the court held that the defendant "failed to demonstrate prejudice necessary for his conviction to be vacated on the basis of the miscitation in the information." *Id.* at 728–29.

█ Appellant must similarly demonstrate prejudice in order to gain a reversal. D.C.Code § 40–716(b) establishes that "operating" and being "in physical control of" a vehicle are not "separate crimes, but rather separate methods for committing the crime of" driving under the influence. *Cain v. United States,* 532 A.2d 1001, 1005 (D.C.1987); *see Scott v. District of Columbia,* 539 A.2d 1085, 1087 (D.C.1988). Thus,

the variance did not go to an essential element of the crime, which (at least in the case of an indictment), requires *per se* reversal. *See Scutchings v. United States,* 509 A.2d 634, 637 (D.C.1986) (reversal required when there is a variance between allegation in the indictment and proof at trial relating to an essential element); *see also Byrd, supra,* 579 A.2d at 728 n. 7 (suggesting that a similar rule might be appropriate for an information). Therefore, as in *Byrd, supra,* "reversal of a conviction is required only if the defendant is prejudiced." *Id.* at 728.

Appellant has failed to demonstrate any prejudice from the variance. Appellant claims that "from the outset of the prosecution through the conclusion of trial, [he] and his counsel assumed that the information was artfully drawn, and that the District meant exactly what it said in the charging document: that [appellant] stood accused solely of 'operating' a vehicle while intoxicated." Appellant does not claim, however, that his defense would have been different had the information included an allegation that he was "in physical control of" an automobile.[6] Indeed, it is difficult to imagine how appellant's defense of general denial could have been adversely affected by the prosecutor's failure to check the appropriate box. *See Carr v. United States,* 585 A.2d 158, 160 (D.C.1991) (finding no prejudice when the prosecutor checked the wrong box on a pre-printed information form, because the defendant failed to show that her defense was adversely affected).

Accordingly, the judgment is affirmed.

---

**6.** Appellant does not allege, for example, that he could have produced evidence to show that he was not in physical control of a vehicle, but chose not to in reliance on the misleading information form.